## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No. 22-149 (JEB)** |
| **ATHANASIOS ZOYGANELES,** | |
| **Defendant.** | |

### <u>MEMORANDUM OPINION</u>

On July 1, 2022, Defendant Athanasios Zoyganeles pled guilty to Parading,

Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), in

relation to his participation in the insurrection on January 6, 2021.  Defendant now moves, over

the Government's opposition, to withdraw his guilty plea, claiming that new evidence has come

to light that will exonerate him.  Because Zoyganeles never specifies the nature of such evidence,

the Court will deny his Motion without prejudice.

## I.    Background

The Court first details the facts that Zoyganeles accepted and then recites this case's

procedural history.  It relies upon the Statement of Offense, <u>see</u> ECF No. 22, which Defendant

admitted was true pursuant to his plea agreement with the Government.  <u>See</u> ECF No. 21.

On January 6, 2021, a special joint session of Congress was held at the United States

Capitol to certify the vote of the Electoral College declaring Joseph R. Biden as President.  <u>See</u>

St. Off., ¶ 3.  During the proceedings, the Capitol and its exterior plaza were closed to the

general public.  <u>Id.</u>, ¶¶ 1–2.  The session began around 1:00 p.m., and a large crowd grew outside

the Capitol throughout these proceedings.  <u>Id.</u>, ¶ 3.  Seeking to disrupt certification, members of

this crowd circumvented safety barriers, assaulted police officers standing guard, and broke through building windows to force entry into the Capitol itself around an hour into the session. Id., ¶¶ 4–6.  This breach of the Capitol resulted in the suspension of the proceedings and in the evacuation of lawmakers from their chambers, as well as costly damage to the building itself and property therein.  Id., ¶¶ 6–7.

Zoyganeles was among those rioting.  Id., ¶ 11.  He unlawfully entered the Capitol with the rioters after having planned for weeks to attend a rally at the Capitol intended to disrupt certification of the election results.  Id., ¶¶ 8–9.  In the days and weeks leading up to the riots, he made multiple comments on social media indicating support for "tak[ing] over" or "storming" the Capitol if Joe Biden were elected.  Id., ¶¶ 8, 10.  He then attended the so-called "Stop the Steal" rally before joining others in unlawfully entering the Capitol, where he proceeded to smoke and take photographs.  Id., ¶¶ 9, 11.  The same day, Defendant sent messages on social media indicating that he was on the "front lines" of the riots and had persisted in forcing his way into the building despite attempts to deter him with "mace," "flash bangs," and "tear gas."  Id., ¶ 12.  Zoyganeles commented on the riots on social media several times in the following days. These comments included the claim that "[t]he only violence [he] saw" was from police officers and a warning that rioters would "take u out if needed."  Id., ¶ 13.  Defendant described his participation in the riots as "fun and exciting" and posted an article about two police officers being killed by a vehicle that rammed a Capitol barricade, saying, "Being a capital [sic] police officer is a dangerous job[ n]ow that the people know[ w]e have an evil government."  Id., ¶¶ 14–15.

The Government filed a four-count Information charging Zoyganeles on April 29, 2022. See ECF No. 17.  After initially pleading not guilty to all counts, Zoyganeles later reached an

agreement with the Government to plead guilty to the fourth count of the Information: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). See Plea Agmt. Defendant accordingly did so in a colloquy held by the Court on July 1. See ECF No. 25 (Plea Colloquy Tr.). At that colloquy, the Court conducted a full Rule 11 inquiry, finding, *inter alia*, that Zoyganeles was competent to enter a plea and that he understood the terms of the agreement into which he was entering. Id. at 4:6–4:7, 4:8–8:14. In response to the Court's inquiry, Defendant also affirmed that he understood what rights he was forgoing by pleading guilty. Id. at 8:15–11:6.

He now moves to withdraw his plea, see ECF No. 23 (Def. Mot.), over the opposition of the Government. See ECF No. 26 (Gov't Resp.).

## II.    Legal Standard

Federal Rule of Criminal Procedure 11(d)(2)(B) permits a defendant to withdraw a guilty plea prior to sentencing for "a fair and just reason." "Although presentence withdrawal motions should be 'liberally granted,' they are 'not granted as a matter of right.'" United States v. Ahn, 231 F.3d 26, 30 (D.C. Cir. 2000) (quoting United States v. Ford, 993 F.2d 249, 251 (D.C. Cir. 1993)). "The decision to grant a withdrawal is within the court's discretion." United States v. Thomas, 541 F. Supp. 2d 18, 23 (D.D.C. 2008) (citing United States v. Tolson, 372 F. Supp. 2d 1, 8 (D.D.C. 2005)).

Courts deciding a motion to withdraw a guilty plea typically consider three factors: "(1) whether the defendant asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." United States v. Magruder, No. 19-203, 2021 WL 5769462, at *5 (D.D.C. Dec. 6, 2021) (quoting United States v.

3

Taylor, 139 F.3d 924, 929 (D.C. Cir. 1998)).  The final factor of these three is "viewed as the most important," id. (internal quotation marks omitted), and assesses whether the defendant entered his plea knowingly, voluntarily, and intelligently.  United States v. McCoy, 215 F.3d 102, 107 (D.C. Cir. 2000).

## III.   Analysis

Defendant here does not contend that the Court's Rule 11 inquiry was in any way deficient.  See Def. Mot. at 2.  He instead posits that "issues exist pertaining to newly discovered evidence that could have impacted the merits of a motion to suppress evidence."  Id.  This new evidence — which he does not specify — purportedly vindicates his "concerns about the process by which he was charged in each count of the Information and the propriety of the case brought by the government against him."  Id.  Zoyganeles argues that, in light of this new evidence, each factor of the tripartite test for granting withdrawal weighs in his favor.  The Court discusses each in turn.

### A. Claim of Innocence

The Court first looks at whether Defendant has asserted a viable claim of innocence. "Whether the movant has asserted his legal innocence is an important factor to be weighed," but "[i]f the movant's factual contentions, when accepted as true, make out no legally cognizable defense to the charges, he has not effectively denied his culpability, and his withdrawal motion need not be granted.  On the other hand, where the motion does assert legal innocence, presentence withdrawal should be rather freely allowed."  United States v. Barker, 514 F.2d 208, 220 (D.C. Cir. 1975) (citation omitted).

The problem here is that Defendant offers no factual contentions.  Beyond his conclusory assertions that newly discovered evidence will totally exonerate him, Zoyganeles never provides

the Court with the details of this evidence necessary for an assessment of its relevance and value.

As our Circuit has explained, "[S]ummary assertions of innocence" alone are not enough.

United States v. Robinson, 587 F.3d 1122, 1132 (D.C. Cir. 2009). "Were mere assertion of legal

innocence always a sufficient condition for withdrawal, withdrawal would effectively be an

automatic right. There are few if any criminal cases where the defendant cannot devise some

theory or story which, if believed by a jury, would result in his acquittal." Barker, 514 F.2d at

221.

      To have a cognizable defense, Defendant "must do more than make a general denial in

order to put the Government to its proof; he must affirmatively advance an objectively

reasonable argument that he is innocent, for he has waived his right simply to try his luck before

a jury." Robinson, 587 F.3d at 1131 (internal quotation marks and citations omitted). As he has

not done so, the first factor weighs against withdrawal.

      B. Prejudice to the Government

      The Court next considers whether granting this Motion would prejudice the

Government's ability to prosecute this case. Two common examples of such prejudice include

"the difficulty the Government would encounter in reassembling far-flung witnesses in a

complex case" and "where a defendant's guilty plea [would] remove[] him from an ongoing trial

of co-defendants" to his advantage. Barker, 514 F.2d at 222. Neither is present here. Given the

minimal delay between the plea and this Motion, as well as the absence of any assertion of

prejudice by the Government, this factor favors Defendant. "This factor, however, has never

been dispositive in [D.C. Circuit] cases." United States v. Curry, 494 F.3d 1124, 1128 (D.C. Cir.

2007) (internal quotation marks omitted). As such, the Court's analysis "focuses on the first and

third factors." Id.

C.  Taint

The most important factor to consider is whether Zoyganeles's plea was somehow tainted.  Magruder, 2021 WL 5769462, at *5.  For him to succeed, he must show "that the district court's taking of the guilty plea either failed to conform to the requirements of Federal Rule of Criminal Procedure 11 . . . or was in some other sense constitutionally deficient." Tolson, 372 F. Supp. 2d at 9.  "A plea of guilty is constitutionally valid if and only if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Thomas, 541 F. Supp. 2d at 23 (quoting McCoy, 215 F.3d at 107) (internal quotation marks omitted).

Zoyganeles contends that he "was not capable of making a knowing and voluntarily decision to enter into the plea and only did so because he saw no other path forward due to his inability to fully understand the process by which he was charged in each count of the Information and the propriety of the case brought by the government against him."  Def. Mot. at 2.  A finding of taint requires more than this vague and generalized assertion.  It arises in "highly questionable circumstances," such as when a defendant misunderstands the crimes charged, has ineffective assistance of counsel when entering the plea, or is mentally ill.  Barker, 514 F.2d at 221.  Without more information about Defendant's mental state at the time he pled or the reasons for his purported lack of comprehension, the Court cannot conclude that his guilty plea was tainted.

While the Court is required to grant motions to withdraw guilty pleas liberally, to do so here would be to grant Zoyganeles's unsupported Motion as of right, which the caselaw proscribes.

6

**IV.    Conclusion**

For the foregoing reasons, the Court will deny without prejudice Defendant's Motion to

Withdraw his Plea of Guilty.  A separate Order so stating will issue this day.

s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  October 7, 2022